EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:  Angelita Morales Velázquez | Querella  2002 TSPR 17  156 DPR _____ |
|---|---|

Número del Caso: CP-1999-14

Fecha: 12/febrero/2002

Oficina del Procurador General:

Lcda. Minnie H. Rodríguez López
Procuradora General Auxiliar

Abogado de la Parte Querellada:
Lcdo. Harry Anduze Montaño

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

| | | |
|---|---|---|
| Angelita Morales Velázquez | CP-1999-14 | Conducta Profesional |

PER CURIAM

San Juan, Puerto Rico, a 12 de febrero de 2002.

I

La conducta que da lugar a la presente acción disciplinaria contra la Lic. Angelita Morales Velázquez (en lo sucesivo "la querellada") tiene su génesis en un procedimiento administrativo que se llevó a cabo el 25 de junio de 1998 en el Departamento de la Vivienda del Municipio de San Juan, Programa de Sección Ocho, caso Núm. 98-073 (J.O.R.G.) (8537). El propósito del mismo era determinar si procedía cancelarle a la Sra. Miriam Santiago

Andújar, clienta de la abogada aquí querellada, los beneficios del Programa de Sección Ocho.[1]

A la vista administrativa, celebrada el 25 de junio de 1998 en el Departamento, comparecieron la Sra. Santiago Andújar, la querellada como su representante legal,[2] la Lic. Natasha Del Valle y la Lic. Emma Molinary, en representación del Departamento. La misma se celebró de manera informal, sin equipo de grabación ni secretaria que tomara nota de lo acontecido, sin juramentar a los testigos, en la biblioteca de la Oficina de Asuntos Legales del Municipio de San Juan, sentados todos[3] frente a una mesa rectangular, en compañía del Lic. José O. Ramos González, Oficial Examinador.[4] Este último, luego de llevar a cabo los trámites de rigor para dar inicio a la vista, expresó que la Lic. Del Valle, allí presente, es parte en un caso pendiente ante los tribunales en el cual él representa legalmente a la parte adversa, razón por la cual dejó a la consideración del Departamento y de la Sra. Santiago Andújar si tenían reparo en que él fungiera como Oficial Examinador. Ante la conformidad de ambas partes, el Oficial Examinador le concedió a la Lic. Del Valle su solicitud de hacer unas expresiones sobre la problemática general existente entre ésta —en calidad de arrendadora— y los inquilinos de los apartamentos del Programa de

---

[1] La Lic. Natasha Del Valle, en representación de HIMA Corporation —arrendadora del apartamento ocupado por la Sra. Santiago Andújar—, le solicitó al Departamento de la Vivienda del Municipio de San Juan (en lo sucesivo "el Departamento") que le cancelara a esta última el beneficio económico del Programa de Sección Ocho. Ello, debido a que, alegadamente, en el apartamento de la Sra. Santiago Andújar residen personas que no son miembros de la composición familiar y que, diariamente, algunos de sus miembros hacen ruidos o realizan actos que perturban la paz y la tranquilidad de sus vecinos.

[2] La querellada trabaja para la Corporación de Servicios Legales de Puerto Rico.

[3] En la vista estuvieron presentes los testigos del Departamento, no así los de la Sra. Santiago Andújar, quienes permanecieron fuera del salón en el pasillo adyacente al mismo.

Sección Ocho. La querellada objetó que la Lic. Del Valle continuara expresándose sin antes habérsele tomado juramento.

A raíz de lo anterior, surgió una discusión desordenada entre la querellada y el Oficial Examinador. Este último le indicó a la primera que en esas vistas no se toma juramento y que siendo él quien dirige los procedimientos, él es también quien determina lo que allí se hace. Así, pues, autorizó a la Lic. Del Valle a proseguir. La querellada continuó objetando con vehemencia y simultáneamente levantó su tono de voz. Solicitó la formalización de los procedimientos, insistió en que la Lic. Del Valle no podía expresarse y verbalizó que se reservaba el derecho a solicitar la inhibición del Oficial Examinador. Éste, en voz alta y alterado, le ordenó que se callara y reiteró que él era quien decidía.[5] Las licenciadas Del Valle y Molinary intervinieron en la discusión increpándole a la querellada sobre su comportamiento. Fue entonces cuando el Oficial Examinador dio un "manotazo" en la mesa e indicó que se inhibía del caso "porque esa señora, refiriéndose a la Lcda. Morales Velázquez, está `loca´."[6]

Cabe señalar que el tono de voz de ambos fue inadecuado.[7] Incluso, sus voces se escuchaban tanto en el área donde permanecían los testigos de la Sra. Santiago Andújar como en la oficina de la Lic. Myrna Ortiz, Directora de Asuntos Legales del Municipio quien, tras escuchar los ruidos y las voces se dirigió al lugar y suspendió la vista.[8] Mientras partían del salón, y en presencia de los testigos

---

[4] Surge del expediente que el Oficial Examinador vestía ropa casual, sin chaqueta ni corbata.

[5] Surge del Informe del Comisionado, a la página 8, que "[s]e creó así una situación de `toma y dame´ verbal, de `dime y direte´ entre ambos que tornó al [sic] ambiente `fuera de control´ y como `de locos´ (términos del propio Examinador)."

[6] Informe del Comisionado Especial, pág. 9.

[7] Surge del expediente que el tono de voz del Oficial Examinador era mayor que el de la querellada.

[8] La Lic. Ortiz expresó haber escuchado desde su oficina al Oficial Examinador decir "usted se calla", pero en ese momento desconocía a quién él se lo decía. Además, alegó no poder identificar

de la Sra. Santiago Andújar, el Oficial Examinador continuó vociferando que "esa señora", refiriéndose a la querellada, está "loca". Al día siguiente, la Lic. Ortiz le recriminó al Oficial Examinador sobre su comportamiento y le indicó que esa no era la forma de conducir una vista.[9]

Así las cosas, el Oficial Examinador emitió una Resolución en la cual hizo constar su inhibición.[10] Allí mismo, expresó su versión de los hechos y le recomendó al Departamento que le remitiera una copia de dicha Resolución a la Oficina del Procurador General.[11]

Por otra parte, la Lic. Del Valle envió una misiva a la Corporación de Servicios Legales de Puerto Rico exponiendo su versión de los hechos y solicitando el relevo de la querellada de la representación legal de la Sra. Santiago Andújar. Asimismo, la Lic. Molinary le remitió una carta a la Directora de la Oficina de Asuntos Legales del Municipio, Lic. Ortiz, con su versión de los hechos y recomendando que se nombrase otro Oficial Examinador para el caso. Por último, cabe indicar que, conforme al testimonio de varios jueces frente a los cuales la querellada ha postulado, ésta ha actuado respetuosamente en sus respectivas salas y ha dado cumplimiento a los Cánones de Ética Profesional. Por su parte, los compañeros de trabajo de la querellada expresaron que ésta es "honesta, cumplidora, comprometida con la clientela".[12]

Así las cosas, el Departamento remitió copia de la Resolución del Oficial Examinador a la Oficina del Procurador General. A raíz

---

lo que decía la querellada, ya que su tono de voz era más bajo. Escuchó, también, un "palmetazo" en la mesa. Es entonces cuando procedió al lugar de la vista para suspenderla, por considerarse con facultad para ello.

[9] Alegadamente, no hablaron de presentar una querella en contra de la querellada.

[10] La Resolución está fechada el 25 de junio de 1998, a pesar de que él la firmó posteriormente. Informe del Comisionado Especial, pág. 10.

[11] El Oficial Examinador niega haber sido el quejoso en la presente acción disciplinaria.

[12] Informe del Comisionado Especial, pág. 11.

de lo anterior, el Procurador General realizó una investigación y, el 9 de marzo de 1999, nos sometió el informe correspondiente. Concluyó que existe base para iniciar un procedimiento disciplinario contra la querellada por alegadas violaciones a los Cánones 6 y 9 de Ética Profesional, 4 L.P.R.A. Ap. IX, y posible infracción al Canon 11. Tras concederle término a la querellada para expresarse en torno al referido informe y recibida su comparecencia, mediante Resolución de 20 de agosto de 1999, autorizamos al Procurador General a presentar una querella en contra de la Lic. Morales Velázquez, lo cual hizo el 29 de octubre de 1999. Le imputó violaciones a los Cánones 6 y 9 de Ética profesional, *supra*. Tras varios trámites procesales, mediante Resolución de 29 de junio de 2000, nombramos Comisionado Especial al Hon. Enrique Rivera, Ex Juez Superior, y le referimos este asunto para que recibiera la prueba y nos rindiera un informe con sus determinaciones de hechos y recomendaciones.

Luego de los trámites correspondientes, incluyendo la celebración de vistas, el Comisionado Especial presentó su informe el 4 de diciembre de 2000.[13] Concluyó que, a pesar de que la informalidad con la cual se llevó a cabo la vista propició el incidente ocurrido, ello no justificó el ambiente desordenado y la falta de respeto. Reiteró el deber de la querellada de acatar las instrucciones del Oficial Examinador. No obstante, manifestó su preocupación con respecto a que si ésta no estaba conforme con los procedimientos quedaba desprovista de un mecanismo de revisión, por cuanto no existía un récord oficial de lo allí acontecido. Cuestionó, además, el que el Procurador General no evaluara el comportamiento del Oficial Examinador a pesar de que éste también actuó con cierto grado de impropiedad. Por último, dejó a nuestra consideración el

---

[13] Es menester señalar que ni el Lic. José O. Ramos González, Oficial Examinador, ni el Departamento entienden que son la parte quejosa que refirió este asunto al Procurador General. Para todos los efectos, el Comisionado Especial consideró al Oficial Examinador como el quejoso.

determinar si la conducta de la querellada violentó los Cánones 6 y 9 de Ética Profesional, *supra,* imputados en la querella.[14]

Sometido este asunto, resolvemos.

---

[14] A modo de observación, el Comisionado Especial mostró preocupación por la formalidad con la cual deben celebrarse las vistas ante los organismos con funciones cuasi-judiciales.

El Canon 6 de Ética Profesional, *supra,* regula la conducta de los miembros de la clase togada ante las agencias gubernamentales. Dispone:

> **[a]l prestar sus servicios profesionales ante organismos legislativos o administrativos el abogado debe observar los mismos principios de ética profesional que exige su comportamiento ante los tribunales.** Es impropio de un abogado ocultar su gestión profesional ante dichas agencias gubernamentales mediante el empleo de terceros o de medios indirectos para promover determinada acción gubernamental en interés de su cliente. Un abogado que ejerza su profesión y que además ocupe un cargo legislativo o gubernamental debe anteponer el interés público al de su cliente cuando ambos vengan en conflicto e inmediatamente renunciar la representación del cliente. (Énfasis nuestro.)[15]

A su vez, el Canon 9 de Ética Profesional, *supra,* establece lo siguiente con respecto a la conducta de los abogados ante los tribunales:

> [e]l abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.
>
> El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa.

Sobre este particular, hemos sido claros con respecto a la obligación de todo abogado de actuar de tal modo que siempre prevalezca en los tribunales un ambiente de decoro y solemnidad. *In re Ramírez Ramírez,* res. el 26 de mayo de 2000, 151 D.P.R. \_\_\_, 2000 T.S.P.R. 90, 2000 J.T.S. 97, pág. 1258.

Nos resta aplicar los principios enunciados al presente caso.

III

Independientemente de la informalidad con la cual el Oficial Examinador condujo la vista administrativa que dio lugar a la querella de epígrafe, la querellada venía obligada a acatar sus instrucciones, a tenor de lo establecido en el Canon 6 de Ética Profesional, *supra.* La querellada incurrió en conducta profesional impropia por alzarle la voz al Oficial Examinador, faltándole así el respeto y atentando contra la solemnidad y decoro característico de todo procedimiento, bien sea ante los tribunales o ante las agencias administrativas.

Dicho lo anterior, concluimos que la Lic. Angelita Morales Velázquez infringió el Canon 6 de Ética Profesional, *supra*, al así actuar. Todo procedimiento administrativo de naturaleza cuasi-judicial debe llevarse a cabo salvaguardando el ambiente de decoro y respeto que corresponde en tales circunstancias, irrespectivamente de su carácter informal. Los abogados que comparecen a tales vistas en representación de sus clientes y los Oficiales Examinadores vienen obligados a promover el respeto en este tipo de procedimiento.

Concluimos, además, que la Lic. Morales Velázquez no infringió el Canon 9 de Ética Profesional, *supra*. Ello, en vista de que la conducta impropia de la querellada fue ante una agencia gubernamental, no ante un tribunal. En casos ante organismos administrativos, el Canon 6 es el que incorpora las normas que bajo el Canon 9 se establecen para los abogados ante foros judiciales.

Por los fundamentos esbozados, amonestamos a la Lic. Angelita Morales Velázquez por su conducta irrespetuosa hacia el Lic. José O. Ramos González, Oficial Examinador. No imponemos una sanción mayor por considerar como atenuante la conducta inadecuada del Oficial Examinador al alzar la voz de forma destemplada, hacer expresiones despectivas hacia la querellada y conducir la vista

---

[15] Véase, además, *In re Águila López,* res. el 27 de septiembre de 2000, 152 DPR ___, 2000 T.S.P.R. 166, 2000 J.T.S. 178, pág. 382.

informal de manera tal que propendía a que el procedimiento fuera descontrolado.[16]

Se le apercibe a la Lic. Morales Velázquez que en el futuro deberá dar fiel cumplimiento a los Cánones de Ética Profesional que rigen la abogacía y deberá observar para con las agencias administrativas y los tribunales una conducta que se caracterice por el mayor respeto, so pena de la imposición de sanciones disciplinarias más severas.

Se dictará sentencia de conformidad.

---

[16] No tenemos ante nuestra consideración una querella contra el Lic. José O. Ramos Velázquez, razón por la cual éste no es objeto de sanción; no podemos soslayar, sin embargo, su comportamiento a los fines de examinar en el contexto adecuado la conducta de la Lic. Morales Velázquez.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Angelita Morales Velázquez          CP-1999-14          Conducta
                                                        Profesional

SENTENCIA

San Juan, Puerto Rico, a 12 de febrero de 2002.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, amonestamos a la Lic. Angelita Morales Velázquez por su conducta irrespetuosa hacia el Lic. José O. Ramos González, Oficial Examinador.

Se le apercibe a la Lic. Morales Velázquez que en el futuro deberá dar fiel cumplimiento a los Cánones de Ética Profesional que rigen la abogacía y deberá observar para con las agencias administrativas y los tribunales una conducta que se caracterice por el mayor respeto, so pena de la imposición de sanciones disciplinarias más severas.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Presidente señor Andréu García inhibido. El Juez Asociado señor Fuster Berlingeri no intervino.

Carmen E. Cruz Rivera
Secretaria del Tribunal Supremo Interina